**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

Hearing Date: July 19, 2022
Hearing Time: 10:00 a.m.

| | |
|---|---|
| In re: | Chapter 11 |
| Charlotte Equities, LLC | Case No. 22-22007 |
| Debtor(s). | |

**DEBTORS MOTION FOR AN ORDER APPROVING THE PRIVATE SALE OF THE DEBTOR'S PROPERTY LOCATED AT 7 CHARLOTTE DRIVE WESLEY HILLS NY 10977 FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS, AND GRANTING RELATED RELIEF**

_____

Charlotte Equities, LLC., ("Debtor" & "Debtor in Possession") by and through their attorneys, M. Cabrera & Associates, hereby move (the "Sale Motion") this Court for entry of an order.

The Debtors request entry of an order, substantially in the form attached hereto as **Exhibit "A"** (the "Sales Order") authorizing, approving and directing the sale of 7 Charlotte Drive Wesley Hills, NY 10977 (the "Property").

In support of the Sale Motion, the Debtor relies upon the declaration of Haim Goldstein of CGold Realty in support of the Sale Motion, the Debtor, by and through his undersigned counsel, respectfully represent as follows:

**RELIEF REQUESTED**

1. By this Sale Motion, the Debtor seeks entry of the Sale Order that will approve the sale of the Property to A&M OSM LLC and grant related relief.

2. For the reasons set forth herein, the Debtor submits that the relief requested herein is in the best interest of the Debtor, his estate, the creditors, and other parties-in-interest, and therefore, should be granted.

## JURISIDICTION AND VENUE

3. This Court has jurisdiction to consider this Sale Motion under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue of these cases and this Sale Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

4. The legal predicates for the relief requested herein are sections 105, 363, 365, 503, and 507 of title 1 of the United States Code (the "Bankruptcy Code"), Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 6004-1 of the Local Rules (the "Local Bankruptcy Rules") for the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") and the Guidelines for the Conduct of Assets Sales promulgated by General Order M-383 of the Bankruptcy Court (the "Sale Guidelines").

## BACKGROUND

### I. The Chapter 11 Case

1. On January 7, 2022 ("Petition Date") the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. The Debtor is a single asset real estate entity and is managing its property as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. Neither the Debtor nor any other entity has requested the appointment of a trustee and no trustee, examiner, or statutory committee has been appointed.

2. A motion to dismiss or convert was filed by the United States Trustee ("UST") on February 8, 2022.

3. Matthew M. Cabrera and M. Cabrera & Associates, PC were retained by the Debtor on March 4, 2022.

4. Counsel appeared at hearing on March 10, 2022, and matter was adjourned.

5. Matthew M. Cabrera and M. Cabrera & Associates, PC substituted into the case on March 21, 2022.

6. Counsel appeared at the adjourned hearing on March 22, 2022, and the UST agreed to carry the motion to dismiss.

7. To date, the Office of the United States Trustee for the Southern District of New York (the "U.S. Trustee") has not appointed a creditor's committee in the Chapter 11 case, nor has any trustee or examiner been appointed therein.

8. Prior to the filing of the bankruptcy the Debtor via a real estate broker marketed the Property, the Debtor received and accepted from A&M OSM LLC ("A&M") offer of $340,000.00.

9. After the filing, counsel for the second mortgage holder, U.S. Bank Trust National Association, as Trustee, as Trustee for ABS Loan Trust V (the "ABS Loan") raised issues regarding the value of the property.

10. Debtor's counsel engaged with counsel for ABS Loan and started discussions regarding resolution of the second mortgage.

11. Chaim Goldstein, on behalf of the Debtor reached out to Select Portfolio Servicing, Inc., ("SPS"), the servicer for the ABS Loan and was able to secure a settlement after several months of negotiations.

12. The Settlement Agreement as offered by SPS and agreed upon by the parties financially responsible for the second mortgage reduces the amount owed on the second mortgage to $82,388.25 to be paid on or before August 5, 2022.

13. With the new settlement agreement, A&M was contracted and has agreed to increase their offer to purchase the Property to $450,000.00.

**II. The Proposed Transaction**

14. Charlotte Equities, LLC seeks to sell the Property to A&M for $450,000.00. Both the Debtor and A&M have had extensive discussions concerning the sale. The purchase price is more than sufficient to pay all outstanding property taxes and any and all encumbrances that may

be attached to the Property including any Permitted Post-Closing Encumbrances and Assumed Liabilities, if any.

15. The Debtor wishes to sell the property to resolve two ongoing foreclosure action.

### III. The Debtor's Marketing and Sales Efforts

16. The appraised value of the Property was determined to be $320,000.00 and the Property was listed for sale in the amount of $350,000.00.

17. C Gold Realty sent out direct and indirect mailings to other brokers (and asked them to consider directly adding the listings to their sites) and the Properties were indirectly marketed on various brokers sites via syndication through the MLS.

18. The Broker received some initial offers to purchase the property, but none that would satisfy the amount owed on the first mortgage and with enough left over to satisfy a reasonable settlement of the second mortgage.

19. The Debtor accepted the offer received from A&M OSM LLC.

20. The purchase price offered by A&M was above the appraised value but below the asking price of $350,000.00 for the Property. The original purchase agreement was signed by all parties dated March 18, 2022 - **See Exhibit "B"**.

21. The updated purchase agreement was signed by all parties dated May 12, 2022 - **See Exhibit "C"**.

22. Debtor's counsel directed Debtor to request at least a 5% deposit from A&M. After some discussions, A&M agreed to pay a deposit of $22,500.00 instead of the $1000.00 as listed in the agreement.

23. A deposit of $22,500.00 was received by Debtor's attorney and is being held until the closing is conducted.

24. The Debtor is in the process of retaining a closing for the real estate closing.

**IV.    Extraordinary Provisions under the Sale**

25.    The proposed Sale Order and the Sale Agreement contain the following items that may be considered Extraordinary Provisions under the Sale:

- **Requested Findings as to Successor Liability:** The proposed Sale Order provides that the transfer of the Property to A&M, will not subject A&M or any of its affiliates or designees to any liability whatsoever that arises prior to the Closing or by reason of such transfer under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia, based, in whole or in part, directly or indirectly, on any theory of law or equity, including, without limitation, any theory of equitable law, any theory of antitrust, successor, transferee, derivative, or vicarious liability or any similar theory and/or applicable state or federal law or otherwise.

- **Sale Free and Clear:** The Property shall be transferred free and clear of all encumbrances (other than Permitted Post-Closing Encumbrances and Assumed Liabilities) to the fullest extent permitted by Bankruptcy Code section 363.

- **Relief from Bankruptcy Rule 6004(h):** The Debtors seek relief from the 14-day stay imposed by Bankruptcy Rule 6004(h).

- **Provisions of the Sale:** The purchase price for the Property is $450,000.00. The Deposit given was $22,500.00. The sale is subject to the contingencies as set forth in the Purchase Agreement. The Debtor shall retain its own closing attorney and make the necessary retention application for the attorney to be approved by Order of the Court, if necessary. There is no relationship between the Debtor and the Buyer.

- **Private Sale:** The Property is being sold without a bidding auction or process. The Properties was appraised and marketed for over ninety days on the MLS by a Real Estate Broker. The Debtor received several offers and attempted to obtain offers at or above the asking price when multiple offers were presented. The purchase prices currently accepted were the maximum amount the Debtors were likely to received when taking into consideration the current market at the time.

## BASIS FOR RELIEF AND APPLICABLE AUTHORITY

26. The Debtors submit that application of the section 363(b) standard for sales outside of the ordinary course of a debtor's business is met here. Section 363(b) of the Bankruptcy Code provides, in relevant part: "The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." Bankruptcy Code section 363(b)(1). This Court's power under Bankruptcy Code section 363 is supplemented by Bankruptcy Code section 105(a), which provides in relevant part: "The Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." Bankruptcy Code section 105(a). As set forth below, the Debtors submit they have satisfied the requirements of Bankruptcy Code sections 105, 363, and 365 as those sections have been construed by courts in the Second Circuit.

27. A Debtors should be authorized to sell assets outside of the ordinary course of business pursuant to section 363 of the Bankruptcy Code and prior to obtaining a confirmed plan of reorganization if it demonstrates a sound business purpose for doing so. *See, e.g., Official Comm. of Unsecured Creditors of LTV Aerospace & Def. Co. v. LTV Corp. (In re Chateaugay Corp*.), 973 F.2d 141, 143-45 (2d Cir. 1992) (holding that a judge reviewing a section 363(b) application must find from the evidence presented a good business reason to grant such

application); *see, e.g., Licensing by Paolo, Inc. v. Sinatra (In re Gucci)*, 126 F.3d 380, 387 (2d Cir. 1997); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.*), 722 F.2d 1063, 1070-71 (2d Cir. 1983); *In Bos. Generating, LLC*, 440 B.R. 302, 322 (Bankr. S.D.N.Y. 2010); *In re Glob. Crossing Ltd.*, 295 B.R. 726, 743 (Bankr. S.D.N.Y. 2003); *In re Ionosphere Clubs, Inc.*, 100 B.R. 670, 675 (Bankr. S.D.N.Y. 1989).

28. It was the initial intention of the Debtor to obtain reductions of the both the first and second mortgages in an attempt to maximize the value of the Property. The attempted negotiations with the first mortgage holder proved to be fruitless and initial negotiations with the second mortgage holder were slow to materialize. The Debtor has come to decision that a sale at this point with A&M for the increased amount will maximize any value to be obtained from the Property and provide satisfaction to both he first and second mortgage holders as well as produce sufficient funds for any necessary closing costs and administrative costs in this case. The Debtor has articulated a clear business justification for entering into the Sale. The Debtor has determined in their best judgment that a sale of the Property, will maximize value and is in the best interests of the Debtor, any creditors, the estate, and any other parties-in-interest

29. Once a court has determined there is a sound business justification for a sale outside of a plan, the court must also determine that (i) the debtor(s) have provided the interested parties with adequate and reasonable notice, (ii) the sale price is fair and reasonable, and (iii) the Buyer is proceeding in good faith. See *In re Gen. Motors Corp.*, 407 B.R. 463, 493-94 (Bankr. S.D.N.Y. 2009); *In re Betty Owens Sch.*, No. 96 Civ. 3576 (PKL), 1997 U.S. Dist. LEXIS 5877, at *14 (S.D.N.Y. Apr. 16, 1997); *Polvay v. B.O. Acquisitions, Inc.* (In re Betty Owens Sch., Inc.), No. 96 Civ. 3576 (PKL), 1997 WL 188127, at *4 (S.D.N.Y. Apr. 17, 1997).

30. As set forth above adequate notice was provided to all interested parties during the listing period of the property that lasted over three months. The sale price is fair and reasonable.

The Debtors and their Broker have entertained offers from several potential buyers, eventually settling on the offers that appeared at the time the most likely to succeed and result in a sale closing.

31. Bankruptcy Code section 363(f) permits a debtor to sell property free and clear of another party's interest in the property if: (a) applicable non-bankruptcy law permits such a free and clear sale; (b) the holder of the interest consents; (c) the interest is a lien and the sale price of the property exceeds the value of all liens on the property; (d) the interest is in bona fide dispute; or (e) the holder of the interest could be compelled in a legal or equitable proceeding to accept a monetary satisfaction of its interest. See Bankruptcy Code section 363(f). Because Bankruptcy Code section 363(f) is stated in the disjunctive, satisfaction of any one of its five requirements will suffice to warrant approval of the proposed sale. *See Scherer v. Fed. Nat'l Mortg. Ass'n (In re Terrace Chalet Apartments, Ltd.*), 159 B.R. 821, 825 (N.D. Ill. 1993) (sale extinguishes liens under section 363(f) as long as one of the five specified exceptions applies).

32. Here, the Debtors submit that Bankruptcy Code sections 363(f)(2)(3) and (5) are met. First, all parties known to have asserted a lien or other encumbrance on the Property will receive notice of the Sale. To the extent they have not objected by the Sale Motion Objection Deadline, they will be deemed to consent to the Sale free and clear of all encumbrances (other than Permitted Post-Closing Encumbrances and Assumed Liabilities). The Debtor proposes to sell the Property in a commercially reasonable manner and expects that the value of the proceeds from the sale or will fairly reflect the value of the property sold. Second, the Debtor further proposes that upon the closing, any party with a lien or other encumbrance shall have a corresponding security interest in the proceeds of the Sale, as such liens and encumbrances will attach to the proceeds of the Sale with the same validity, priority, and force and effect as such encumbrance had immediately prior to the closing of the Sale. In addition, all such persons could be compelled to accept money satisfaction for their interests. As such, the requirements of section 363(f) of the

Bankruptcy Code would be satisfied for the sale of the Property free and clear of all encumbrances (other than Permitted Post-Closing Encumbrances and Assumed Liabilities)

33. The Debtor submits that it is appropriate to sell the Property free and clear of successor liability relating to the Property. Such limitations on successor liability ensure that A&M is protected from any claims or lawsuits premised on the theory that A&M is a successor in interest to the Debtor's Estate. If such relief is not granted, the purpose of an order purporting to authorize the transfer of assets free and clear of encumbrances (other than Permitted Post-Closing Encumbrances and Assumed Liabilities) would be frustrated by the potential for claimants to thereafter use the transfer as a basis to assert claims against a buyer arising from a seller's pre-sale conduct. Moreover, without such assurances, the Debtor would run the risk that any potential purchaser would offer a reduced purchase price.

34. Courts have consistently held that a buyer of a debtor's assets pursuant to a Bankruptcy Code section 363 sale takes free and clear from successor liability relating to the debtor's business. *See, e.g., In Matter of Motors Liquidation Co.*, No. 15-2844-BK(L), 2016 WL 3766237 (2d Cir. July 13, 2016), *12, *13 ("We agree that successor liability claims can be 'interests' when they flow from a debtor's ownership of transferred assets" and holding that "a bankruptcy court may approve a § 363 sale 'free and clear' of successor liability claims if those claims flow from the debtor's ownership of the sold assets. Such a claim must arise from a (1) right to payment (2) that arose before the filing of the petition or resulted from pre-petition conduct fairly giving rise to the claim"); *In re Chrysler LLC*, 405 B.R. 84, 111 (Bankr. S.D.N.Y. 2009) ("[I]n personam claims, including any potential state successor or transferee liability claims against New Chrysler, as well as in rem interests, are encompassed by section 363(f) and are therefore extinguished by the Sale."); *Contrarian Funds, LLC v. Westpoint Stevens, Inc.* (*In re Westpoint Stevens, Inc.*), 333 B.R. 30, 50 (S.D.N.Y. 2005) ("Where . . . a sale is to be free and clear of existing

liens and interests other than those of the estate, one or more of the criteria specified in section 363(f) of the statute must also be met."), rev'd in part on other grounds, 600 F.3d 231 (2d Cir. 2010)

35.   Moreover, this Court's authority under Bankruptcy Code section 363 is supplemented by section 105(a) of the Bankruptcy Code, which provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." Bankruptcy Code section 105(a); *see 2 Collier on Bankr.* ¶ 105.01 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2016); *see also Momentum Mfg. Corp. v. Employee Creditors Comm. (In re Momentum Mfg. Corp.)*, 25 F.3d 1132, 1136 (2d Cir. 1994) ("[B]ankruptcy courts are courts of equity, empowered to invoke equitable principles to achieve fairness and justice in the reorganization process."); *Croton River Club, Inc. v. Half Moon Bay Homeowners Ass'n (In re Croton River Club, Inc.)*, 52 F.3d 41, 45 (2d Cir. 1995) (holding that bankruptcy courts have broad equity power to manage the affairs of debtors); *Chinichian v. Campolongo (In re Chinichian)*, 784 F.2d 1440, 1443 (9th Cir. 1986) ("Section 105 sets out the power of the bankruptcy court to fashion orders as necessary pursuant to the purposes of the Bankruptcy Code."); *Volvo White Truck Corp. v. Chambersburg Beverage, Inc. (In re White Motor Credit Corp.)*, 75 B.R. 944, 948 (Bankr. N.D. Ohio 1987) ("Authority to conduct such sales [free and clear of claims] is within the court's equitable powers when necessary to carry out the provisions of Title 11.")

36.   For these reasons, A&M should not be liable under any theory of successor liability relating to the Property, but instead, should hold the Property free and clear of Encumbrances (other than Permitted Post-Closing Encumbrances and Assumed Liabilities) including successor liability claims.

37. Bankruptcy Code section 363(m) provides in relevant part that the reversal or modification on appeal of an authorization under section 363(b) of a sale or lease of property does not affect the validity of a sale or lease under such authorization to a buyer who bought or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal. See Bankruptcy Code section 363(m). "Although the Bankruptcy Code does not define the meaning of 'good-faith buyer,' . . . most courts have adopted a traditional equitable definition: 'one who purchases the assets for value, in good faith and without notice of adverse claims.'" *In re Gucci*, 126 F.3d at 390 (citation omitted). The Second Circuit held that "[t]he 'good faith' component of the test under § 363(m) speaks 'to the equity of [the bidder's] conduct in the course of the sale proceedings. Typically, the misconduct that would destroy a purchaser's good faith status at a judicial sale involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.'" *In Kabro Assocs. Of West Islip, LLC v. Colony Hill Assocs. (In re Colony Hill Assocs.)*, 111 F.3d 269, 276 (2d Cir. 1997) (quoting *In re Rock Indus. Mach. Corp.*, 572 F.2d 1195, 1198 (7th Cir. 1978) (interpreting Bankruptcy Rule 805, the precursor to section 363(m))).

## IMMEDIATE RELIEF IS NECESSARY

38. The Debtor requests that the Court waive the stay imposed by Bankruptcy Rule 6004(h), which provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). As described above, the relief that the Debtor seeks in this Motion is necessary for the Debtor to pursue resolution of the foreclosure action and to preserve the value of the Estate. Accordingly, the Debtor respectfully requests that the Court waive

the 14-day stay imposed by Bankruptcy Rule 6004(h), as the exigent nature of the relief sought herein justifies immediate relief.

## RESERVATION OF RIGHTS

39. Nothing in this Motion should be construed as (a) authority to assume or reject any executory contract or unexpired lease of real property, or as a request for the same; (b) an admission as to the validity, priority, or character of any claim or other asserted right or obligation, or a waiver or other limitation on the Debtors' ability to contest the same on any ground permitted by bankruptcy or applicable non-bankruptcy law; (c) a promise to pay any claim; (d) granting third-party-beneficiary status or bestowing any additional rights on any third party; or (e) being otherwise enforceable by any third party.

## NOTICE

40. Notice of this Motion will be given to: (a) the U.S. Trustee, (b) A&M OSM LLC, (c) counsel to U.S. Bank Trust National Association, as Trustee of LSF9 Master Participation Trust, (d) counsel to U.S. Bank Trust National Association, as Trustee, as Trustee for ABS Loan Trust V, (e) New York State Department of Taxation and Finance, (f) the Internal Revenue Service, (h) the parties included on the Debtors' consolidated list of their 20 largest unsecured creditors, (i) all entities known or reasonably believed to have asserted a lien, encumbrance, claim, or other interest in the Property known to the Debtor, and (j) all parties entitled to notice pursuant to Local Bankruptcy Rule 9013-1(b). The Debtors submit that no other or further notice is required.

## NO PRIOR REQUEST

41. No previous request for the relief sought herein has been made to this Court or any other court.

## CONCLUSION

WHEREFORE, the Debtor respectfully requests that the Court grant the relief required herein and enter a Sale Order after a Sale Hearing, substantially in the form annexed hereto, granting the relief requested herein and for such other and further relief as this Court may deem just and proper.

>M. Cabrera & Associates, P.C.
>Attorneys for the Debtors and Debtors in Possession
>
>By: */s/ Matthew M. Cabrera*
>Matthew M. Cabrera, Esq.
>2002 Route 17M, Suite 12
>Goshen, New York 10924
>(845) 531-5474

Dated: June 24, 2022